**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MIKE CASTRO MARTINEZ,** | ) | |
| **BOP Reg. #17479-003,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **CIVIL ACTION NO. 1:23-00170-JB-N** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 1:19-00033-JB-4** |
| **UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

**MIKE CASTRO MARTINEZ**, a federal prisoner proceeding without counsel (*pro se*), filed a handwritten motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255 dated May 1, 2023 (Doc# 249), seeking relief from the judgment entered against him in the above-numbered criminal action.[1] The Court ordered Martinez to refile his § 2255 motion on the Court's form (Doc# 250);[2] Martinez timely complied on May 24, 2023 (Doc# 251). The assigned District Judge has referred Martinez's §2255 motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C.

---

[1] All "Doc#" citations herein refer to the docket of the above-numbered criminal action. The companion civil action has been opened for administrative and statistical purposes only, and does not contain or receive any filings.

[2] *See* S.D. Ala. CivLR 9(a) ("All persons…moving under 28 U.S.C. § 2255 to challenge a sentence imposed by this Court, must file their…motion with the Clerk using forms available from the Court."); Rule 2(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.").

§636(a)-(b), Rule 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR72(b); (7/7/2026 electronic reference notation). Under S.D. Ala. Gen. LR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report and recommendation to the District Judge as to the appropriate disposition of the §2255 motion, in accordance with 28 U.S. §636(b)(1) and Rule 8(b) of the Rules Governing Section 2255 Proceedings.

The Government timely filed a response (Doc# 268) in opposition to Martinez's § 2255 motion, as ordered by the Court under Rule 4(b) of the Rules Governing Section 2255 Proceedings (Docs# 252, 258), and Martinez timely filed a reply (Doc# 276) to the response. Martinez's § 2255 motion (Docs# 249, 251) is now under submission. Upon due consideration of the § 2255 motion, the Government's response, Martinez's reply, and the record of prior proceedings under Rules 7 and 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the undersigned finds that neither expansion of the record nor an evidentiary hearing is warranted, and **RECOMMENDS** that Martinez's § 2255 motion be **DENIED** and **DISMISSED with prejudice**.

## I. *Factual Background and Procedural History*

For purposes of these findings and recommendations, the undersigned adopts in part the factual summary of the trial evidence contained in the decision of the

Eleventh Circuit Court of Appeals affirming the convictions of Martinez and his three co-defendants on direct appeal:

> On Christmas Eve 2018, the United States Coast Guard intercepted a small, homemade boat on the verge of sinking in choppy waters of the high seas between the Dominican Republic and Puerto Rico. The crew of a Coast Guard airplane first spotted the boat while patrolling the narcotics-trafficking route northeast of the Dominican Republic and northwest of Puerto Rico. The guardsmen considered the boat suspicious because it carried a large number of fuel containers, lacked a visible name or registration number, and used no navigation lights. They reported it to a nearby Coast Guard cutter, the *Richard Dixon*, which detached a small "over-the-horizon" boat to intercept the suspicious boat.
>
> The Coast Guard's boat caught up to the suspicious boat about 50 nautical miles from the coast of the Dominican Republic. It approached with its lights off and shined a spotlight when it was 20 or 30 feet away from the suspicious boat. Coast guardsmen saw "frantic" activity aboard the suspicious boat as two men threw things overboard. When the guardsmen stopped the boat, they found six bales in the water tied to each other and to a seventh bale still inside the boat.
>
> ***
>
> A Coast Guard officer asked the men "who was the master, who was in charge." No one answered, so he asked who piloted the boat. One of the men answered that they all took turns. The others appeared to agree, based on their body language. The boat had a hand tiller that each person could operate for only about three hours at a time. The men said they were traveling from Santo Domingo in the Dominican Republic to Dorado, Puerto Rico….
>
> ***
>
> Then the guardsmen searched the smugglers' boat. They found that the serial number had been filed off the outboard motor. And the boat contained no fishing or recreational equipment and only a few personal items.
>
> ***
>
> …The over-the-horizon boat returned the smugglers to the *Richard Dixon*. On board, the four men identified themselves as Pedro Dino

> Cedado Nunez, Manely Enriquez, Angel Castro Garcia, and Mike Castro Martinez.
>
> The *Richard Dixon* brought the smugglers to Saint Thomas in the Virgin Islands about 10 days later. There, a Homeland Security agent met the smugglers and flew with them to Mobile, Alabama….
>
> ***
>
> The bales weighed about 180 kilograms, and the four men stipulated that they contained cocaine.

(Doc# 226, PageID.1488-1492)*; United States v. Cedado Nunez*, 1 F.4th 976, 981–982 (11th Cir. 2021).

Martinez and his co-defendants were initially arrested on a criminal complaint (Doc# 1), and Martinez was appointed counsel, Jason Darley, at his initial appearance on January 4, 2019. (See Docs# 17, 18). On January 31, 2019, the grand jury for this district returned an initial indictment that charged Martinez and his codefendants with the following violations of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 70501, *et seq.*: conspiracy to distribute and possess with intent to distribute approximately 182 kilograms of cocaine on board a vessel subject to U.S. jurisdiction contrary to Title 46 U.S.C. § 70503(a)(1) in violation of Title 46 U.S.C. § 70506(b) (Count One); and possession with intent to distribute approximately 182 kilograms of cocaine on board a vessel subject to the jurisdiction of the United States in violation of Title 46 § 70503(a)(1) (Count Two). (Doc# 40). Martinez was arraigned on February 12, 2019, and pleaded not guilty to both counts. (Doc# 49).

At a March 15, 2019 pretrial conference, Darley stated that Martinez intended to plead guilty, and a change-of-plea hearing was scheduled for March 26, 2019. (*See* Doc# 63). On March 22, 2019, Darley filed a written plea agreement and factual

resume indicating that Martinez would plead guilty to Count One of the initial indictment, though neither Martinez nor Darley had signed either document. (Doc# 73). However, two days later, Darley filed a "Notice of Withdrawal of Intent to Plead Guilty," indicating that "this issue arose…after consultation with Castro Martinez" the previous day (Doc# 74), and the change-of-plea hearing was canceled (*see* Doc# 75).

Prior to trial, the Government moved for a pretrial ruling on jurisdiction and venue (Doc# 110). The motion was supported by the statements of U.S. Coast Guard members that the involved vessel was 50 nautical miles northeast of the Dominican Republic and had no indicia or documentation of vessel nationality or registry, so they were unable to ascertain who the master was. Further, when asked who was in charge, the suspects advised that all four of them had driven the vessel. (Doc#110-1, PageID.248-52). For their part, all defendants but Martinez filed written motions to dismiss the indictment for lack of jurisdiction. (Docs# 111, 112, and 116). At a June 21, 2019 pretrial hearing, the Court made a preliminary finding of jurisdiction, stating that the boat, known as a "yola," was a stateless vessel in international waters. (Doc# 144, PageID.410).

On June 26, 2019, the grand jury returned a superseding indictment against the defendants for the sole purpose of correcting two scrivener's errors in Count Two of the original indictment. (Doc# 131). The defendants were arraigned on the superseding indictment the next morning, after which trial commenced.[3] The

[3] Jury selection had already taken place on June 3, 2019.

defendants again objected to jurisdiction at trial. (Doc# 208, PageID.1376-1377), unsuccessfully moving for acquittal on the grounds that government failed to prove jurisdiction at the close of the government's case and again after they rested. (Doc# 208, PageID.1280, 1376-78). The Court concluded that the yola was a stateless vessel and the Court had subject matter jurisdiction. (Doc# 208, PageID.1378). The jury then found all defendants guilty of both charges. (Doc# 208, PageID.1381-83).

At the sentencing hearing, Martinez's counsel had no objections to the Presentence Report. (Doc# 265, PageID.1915). Martinez's base offense level and total offense level was 36. (*Id.*, PageID.1917). He had no criminal history points, placing him in Criminal History Category I. The advisory guideline range for custody was 188 to 235 months; for supervised release, five years; for a fine, between $40,000 and $2 million. (*Id.*). Martinez's counsel requested the mandatory minimum sentence of 120 months. (*Id.*, PageID.1918-1919).

Regarding the issue of jurisdiction and whether to enter a plea, counsel stated: "I'm not sure what happened amongst these defendants, but at some point, some information -- and it was bad information -- turned it around because this case should not have been tried." (Doc.# 265, PageId.1918). He stated that his client received bad information (the implication being it was from a source other than trial counsel), and "the case should have pled." *Id*.

At the sentencing hearing, trial counsel stated:

> [Martinez] was brought over and he did debrief. He said that everybody drove the boat. So I think initially before that information spun everybody around -- I think he was on track for a much lesser sentence.

(Doc#265, PageID.1920). Martinez asked the Court for forgiveness and informed the Court of his family circumstances. (Doc# 265, PageID.1920).

The Court imposed a 188-month term of imprisonment for counts one and two, to be served concurrently, followed by five years of supervised probation on each count, also concurrent, and to pay a special assessment of $200. (Docs# 192, 265). While the Court was sympathetic to Martinez's personal history, it took note of the large amount of cocaine involved and the goal of deterrence, and imposed a sentence at the low end of the calculated guideline range. (Doc# 265, PageID.1922-1923).

Martinez and his codefendants appealed their convictions to the Eleventh Circuit. (Doc# 173, 176, 180, 199). Martinez was appointed new counsel on appeal after his trial counsel moved to withdraw, citing lack of appellate experience. (Docs# 177, 194, 195). The defendants advanced two arguments on direct appeal: (1) that the government did not prove the defendants' boat was a vessel subject to the jurisdiction of the United States as a "vessel without nationality" under the MDLEA; and (2) the District Court erred in denying Martinez's motion for judgment of acquittal based on insufficient evidence he knowingly possessed cocaine with the intent to distribute. (Doc# 268-1, PageID.2091). The Eleventh Circuit affirmed the defendants' convictions on June 17, 2021, in a published opinion, concluding that this Court had jurisdiction under the MDLEA, and that there was sufficient evidence that the men knew they were transporting drugs to support their convictions. (Doc# 226); *Cedado Nunez*, 1 F.4th 976.

The defendants jointly filed with the United States Supreme Court a petition for a writ of certiorari to the Eleventh Circuit on the issue of whether the three ways to identify stateless vessels enumerated in §70502(d)(1) are exhaustive. (Doc# 268-2, PageID.2119). The Court denied the petition on May 2, 2022, *Cedado Nuñez v. United States*, 142 S. Ct. 2675 (Mem), 212 L. Ed. 2d 762, thus making Martinez's conviction final. *See Drury v. United States*, 507 F.3d 1295, 1297 (11th Cir. 2007) (holding that a federal prisoner's conviction becomes final when the Supreme Court denies a petition for certiorari).

Martinez filed a hand-written, forty-three-page document titled "Brief for Petitioner Mike Castro Martinez Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255" on May 1, 2023 (Doc# 249), along with an affidavit as an exhibit to the filing. (Doc# 249-1). The Court ordered Martinez to refile his motion on the Court's prescribed form on or before June 12, 2023, and he complied. (Docs# 250, 251). The undersigned considers the May 1 and June 12, 2023 filings together as Martinez's operative § 2255 motion.

In his initial § 2255 motion, Martinez asserted an ineffective assistance of counsel claim on the following grounds:

> In this case, Daley [sic] erroneously advised Martinez that the United States did not have jurisdiction over the boat in Martine's case under the MDLEA. Furthermore, Daley [sic] failed to advise Martinez that Martinez had the ability to plead "straight up" in an indictment without the benefit of a plea bargain and that Martinez thereby had the option of have his offense level reduced by three levels for timely acceptance of responsibility.

(Doc# 249, PageID.1836). He submitted that he would have pleaded "straight up" to the indictment in order to gain a three-level reduction for timely acceptance of responsibility[4] had his trial counsel advised him of the following: that he was not entitled to an evidentiary hearing on jurisdiction under the MDLEA; that the U.S. recognizes a foreign nation's territorial waters at 12 nautical miles from the coast; that the Coast Guard was not required to ask Martinez and his co-defendants individually to make a claim of nationality or registry; that he had the option to enter into an "open plea"; and that he would still have been able to challenge jurisdiction before the district court and appellate court if he pled "straight up." (Doc#249, PageID.1842, 1852).

His initial filing was accompanied by an affidavit in which he states that his trial attorney never told him he had the ability to plead "straight up" without a plea agreement and could thereby preserve his right to challenge jurisdiction. (Doc#249-1, PageID.1851). He further attests: "After the motion to dismiss [for lack of jurisdiction] was denied, I did not discuss the possibility of a guilty plea with Daley [sic], because Daley [sic] never told me of a plea agreement being offered." (Doc#249-1, PageID.1852).

In his subsequent filing on the Court's designated form for § 2255 motions, which the Court will refer to as Castro Martinez's amended motion, Martinez asserts the following as Ground One:

> During his representation of the petitioner Mike Castro Martinez, Jason Bradley Darley, Esq., advised Martinez that he would be entitled to an

[4] *See* U.S.S.G. § 3E1.1

> evidentiary hearing under the MDLEA, and that because the Coast Guard's encounter was initiated approximately 15 nautical miles from the coast of the Dominican Republic, the United States did not have jurisdiction over the boat under the MDLEA. Daley [sic] told Martinez that if the encounter was initiated approximately 50 nautical miles from the coast of the Dominican Republic, the United States still did not have jurisdiction over the boat under the MDLEA. Daley [sic] further explained to Martinez that, because the Coast Guard did not ask Martinez and his three codefendants individually if their [sic] wished to make a claim of nationality or registry, the United States did not have jurisdiction over the boat under the MDLEA. Daley [sic] told Martinez that if he challenged jurisdiction under the MDLEA, the prosecution would be dismissed. Based on this advice, Daley [sic] recommended that Martinez proceed to trial. Martinez proceeded to trial based on Daley's advise [sic] and recommendation and was subsequently convicted and sentenced to 188-months imprisonment.
>
> During his representation of Martinez, Daley [sic] failed to advice [sic] Martinez that he had the ability to plead "straight up" in an indictment without a plea agreement and that if he pled "straight up" to the indictment he would still have been able to challenge jurisdiction in the district court and the appeals court.
>
> Martinez's decision to proceed to trial would have been different if Daley had properly investigated the law and the facts of Martinez's case. As discussed in Martinez's memorandum, Daley's [sic] assessment of the law and facts as it pertains to Martinez's case was incorrect. The only reason Martinez went to trial is because he was totally misinformed about the facts law and facts [sic] concerning his case, and because he believed, based on Daley's [sic] advise, that the prosecution was ultimately going to be dismissed.

(Doc# 251, PageID.1862-63). In his amended motion, Martinez seeks the following relief: "Vacate sentence and allow the petitioner to plead 'straight up' to the indictment." (Doc# 251, PageID.1862).

The Government's response argues that Darley's representation did not fall below the applicable constitutional threshold and, alternatively, any errors in the advice provided would have been harmless. (Doc# 268, PageID.2065). The

Government also presents an affidavit from Darley stating that he discussed with Martinez all options to plea, with or without a plea agreement, or to proceed to trial; that he advised Martinez that his guilt appeared to be clear and could be proven by the Government; and that his client initially agreed to enter a plea. (Doc#268-3, PageID.2162). However, Darley continues, Martinez changed his mind once one of his co-defendants established a contact with the consulate of his home country who reportedly advised the arrest was improper and without jurisdiction. (*Id.*). Darley states he did not expect the jurisdictional argument to succeed at trial after the Court rejected their argument, but Martinez proceeded to trial against his advice. (*Id.*).

Addressing the merits, the Government argues the record demonstrates that Martinez's counsel informed him of the option to plead guilty pursuant to a plea agreement, citing the filing of the plea agreement with the Court by Martinez's counsel and subsequent filing of the notice withdrawal of intent to plead guilty "after consultation with Castro Martinez." (Doc# 268, PageID.2072). The Government also points to trial counsel's statements made at the sentencing hearing as evidence that refutes Martinez's allegations that his attorney pressed him to go to trial. (Doc# 268, PageID.2075). The Government submits that Martinez has not established that counsel had a constitutional obligation to discuss a blind plea where the defendant has refused a written plea agreement or that a blind plea would have been in his interest to the extent that the facts he would have had to stipulate to would have weakened his jurisdictional argument and affected other non-jurisdictional arguments on appeal. (Doc# 268, PageID.2073-74). Further, the Government argues

the challenge to jurisdiction was given serious consideration by the Eleventh Circuit and was not frivolous. (Doc #268, PageID.2074).

The Government argues in the alternative that Martinez has not shown that any defect in trial counsel's advice caused him prejudice, as he cannot demonstrate that the parties would have presented the plea offer to the court or the conviction, or sentence, or both, would be less severe, citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). (Doc #268, PageID.2075-2076). The Government points out that Martinez provides no description of the supposed benefits he would have obtained by pleading guilty. (Doc# 268, PageID.2076-2077). Inferring that Castro Martinez likely intended to argue he would have received credit for acceptance of responsibility under U.S.S.G. § 3E1.1, the Government argues that it was too speculative to conclude that: (1) Martinez would have pleaded guilty at a time and in a fashion to claim acceptance credit; (2) the Court would have awarded acceptance credit; and (3) the Court would have imposed a sentence within the lower range, citing the Seventh Circuit case of *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018) (concluding defendant could not satisfy *Strickland* prejudice prong because argument that by entering a blind plea he would have met the requirements for acceptance credit and been sentenced below the lower guideline range was too speculative). (Doc# 268, PageID.2077).

In his reply, Martinez contends that his trial attorney gave him bad advice and told him they would ultimately succeed on their jurisdictional challenge under any scenario, either before the district court or the court of appeals. (Doc# 276, PageID.2237). Martinez argues he would have pleaded guilty but for that bad advice.

(*Id.*). Martinez asserts throughout his Reply brief that Darley failed to inform him of a plea agreement being offered. (*Id.*, PageID.2236, 2238-39). He concedes the Government's point that he failed to show how a blind plea would have made a difference in his conviction or sentence. (*Id.*, PageID.2240). He argues that he was "prejudiced by his forfeiture, based on the bad advice of his counsel, of the possibility of a three-level reduction for his timely acceptance of responsibility." (*Id.*, PageID.2234). He asks for leave to (again) amend his motion and states that a copy of the amended pleading is attached to his Reply as Exhibit A. (*Id.*, PageID.2241). However, no exhibit was enclosed with the Reply. Martinez concludes by stating that an evidentiary hearing should be granted "unless the Judge can conclude there is no 'reasonable probability' that he would have awarded acceptance credit at sentencing and would have imposed a sentence within the lower range." (*Id.*).

## II. *Legal Standards*

Pursuant to 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. This statute permits collateral challenges in four circumstances: (1) the imposed sentence violated the Constitution or laws of the United States, (2) the Court exceeded its jurisdiction to impose the sentence, (3) the imposed sentence exceeded the maximum authorized by law, or (4) the imposed sentence is otherwise subject to a collateral attack. 28 U.S.C. § 2255(a).

The federal habeas statute provides that when a § 2255 motion is filed, "[u]nless the motion and the files and records of the case conclusive show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

> A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron* [*v. United States*], 291 F.3d [708,] 715 [(11th Cir. 2002)] (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553 (quoting *United States v. Guerra*, 588 F.2d 519, 520-21 (5th Cir. 1979)); *see, e.g., Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the … affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (footnote omitted). *Accord Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). In making this determination, a court must "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to §2255." *Winthrop-Redin*, 767 F.3d at 1215.

## III. *Analysis*

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought up in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d

1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255," (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-688, 694).

" 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F. 2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted). *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). "The *Strickland* test is not easily met; … 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are

few and far between. []' " *Johnson*, 256 F.3d at 1176 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters*, 46 F.3d at 1518. *Accord, e.g., Burt v. Titlow*, 571 U.S. 12, 24, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it only promises the right to effective assistance…"). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992).

> In evaluating the first, or "performance," prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if their "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption" in favor of competence,"…in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).
>
> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's

> unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing on an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. In making the competency determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Kimmelman v. Morrison*, 477 U.S. 365, 394, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citing *Strickland*, 466 U.S. at 689-91) (citations and quotations omitted).

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1486, 176 L. Ed. 2d 284 (2010). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 1405, 182 L. Ed. 2d 379 (2012) (citation omitted). In *Frye*, the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 566 U.S. at 145. The Supreme Court expounded in *Lafler v. Cooper*, 566

U.S. 668, 132 S. Ct. 1376, 138 (2012) that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."

To demonstrate prejudice where a defendant proceeds to trial instead of pleading guilty, a defendant must show that, but for his counsel's errors: (1) a plea offer would have been presented to the court; (2) the court would have accepted it; and (3) the defendant's conviction, sentence, or both would have been less severe under the offer's terms than it was under the judgment and sentence that he actually received. *Medina v. United States*, 797 F. App'x 431 436 (11th Cir. 2019) (*citing Lafler*, 566 U.S. at 163-164 and *Frye*, 566 U.S. at 149-50). Failing to advise a defendant of his ability to plead "straight up" without a plea agreement can potentially constitute ineffective assistance of counsel. *West v. United States*, 2013 WL 1798945, *3 (M.D. Fla., April 29, 2013), *aff'd in part, dismissed in part*, 550 F. App'x 752 (11th Cir. 2013). *See also United States v. Booth*, 432 F.3d 542 (3rd 2005) (section 2255 petitioner entitled to evidentiary hearing on his claim that counsels' failure to advise him he could enter into open plea made him ineligible for three-level reduction adjustment); *United States v. Essien*, 2014 WL 7345714, *4 (S.D. Tex., Dec. 23, 2014) (stating that "if trial counsel did indeed fail to inform Defendant that he could enter an open plea ..., and if counsel did not discuss with Defendant the possibility and consequences of an open plea, then trial counsel was deficient in this regard"); *United States v. Cuellar-Chavez*, 2013 WL 425886, *7 (N.D. Ind., Feb. 04, 2013) ("In light of *Frye*, *Cooper*, *Hill* ..., and *Strickland*, the Court recognizes that a habeas petitioner could

potentially demonstrate ineffective assistance of counsel based on a defense attorney's failure to discuss the option of entering an open plea to an indictment with him during the plea bargaining process.").

Martinez asserts the following claims of ineffective assistance of counsel against Darley as grounds for relief under § 2255:

1. Darley erroneously advised Martinez that the Court lacked jurisdiction to prosecute him under the MDLEA and that the case would ultimately be dismissed for that reason.
2. Darley erroneously advised Martinez that he was entitled to an evidentiary hearing on the issue of MDLEA jurisdiction.
3. Darley failed to advise Martinez that he could plead to the indictment "straight up" (i.e., without a plea agreement with the Government), potentially receive a reduction of up to three offense-level points for acceptance of responsibility, and still challenge jurisdiction on appeal.
4. Darley failed to inform Martinez about the plea agreement filed March 22, 2019 (Doc# 73).

The undersigned finds that Martinez is due neither an evidentiary hearing nor relief on any of these grounds.

**a. Jurisdiction**

In his affidavit attached to the Government's response, Darley avers he did not think Martinez was likely to succeed in arguing the Court lacked jurisdiction under the MDLEA, at least after the Court issued its pretrial preliminary ruling. However,

even accepting as true Martinez's allegations that Darley was more confident that the jurisdictional arguments would succeed, the mere fact those arguments were ultimately unsuccessful does not demonstrate that Darley performed deficiently.

The MDLEA prohibits any person from "knowingly or intentionally … possess[ing] with intent to manufacture or distribute…a controlled substance on board a covered vessel[,]" 46 U.S.C. § 70503(a)(1), and from conspiring to do the same, *id.* § 70506(b). "A 'covered vessel' is the first link in a chain of facts that determines subject-matter jurisdiction." *Nunez*, 1 F.4th at 984. As relevant to this case, the definition of a "covered vessel" includes "a vessel subject to the jurisdiction of the United States[.]" 46 U.S.C. § 70503(e)(1).

Martinez alleges the following in support of his claim that Darley misadvised him that the Court lacked MDLEA jurisdiction:

> At [a pretrial] meeting, Daley [sic] and I discussed what the Dominican Republic and I discussed what the Dominican Republic and the United States recognizes as the Dominican Republic's territorial waters, how jurisdiction would be affected if the encounter was initiated in the territorial waters of the Dominican Republic as opposed to international waters, and the impact of the MDLEA.
>
> Daley [sic] told me…that because the encounter was initiated approximately 15 nautical miles from the coast of the Dominican Republic, the United States did not have jurisdiction over the boat under the MDLEA. Daley [sic] told me that if the encounter was initiated approximately 50 nautical miles from the coast of the Dominican Republic, the United States still did not have jurisdiction of the boat because the Coast Guard did not ask me and my three co-defendants individually if we wished to make a claim of nationality or registry.
>
> Daley [sic] also went through different scenarios, such as if he wasn't able to obtain evidence that the encounter was initiated approximately 15 nautical miles from the coast of the Dominican Republic, but was able to establish that the Coast Guard did not ask me and my three co-

> defendants individually if we wished to make a claim of nationality or registry.
>
> Daley [sic] explained that he would object to jurisdiction on the grounds that the Coast Guard did not ask me and my three co-defendants individually if we wished to make a claim of nationality or registry. Daley [sic] also explained that if the district court failed to dismiss the prosecution for lack of jurisdiction, that the appeals court would, and that was the worst case.

(Doc# 249-1, PageID.1848-1850 (paragraph numbering omitted)).

The MDLEA lists several ways a vessel can be considered a "vessel subject to the jurisdiction of the United States[,]" 46 U.S.C. § 70502(c)(1), including if it is "a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States[,]" *id.* § 70502(c)(1)(E), or if it is "a vessel without nationality[,]" *id.* § 70502(c)(1)(A). As to the "vessel in the territorial waters of a foreign nation" provision, "[t]he United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts." *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003). Therefore, it appears Darley gave correct advice that a vessel 15 nautical miles from the coast of the Dominican Republic would fall outside § 70502(c)(1)(E)'s definition of a "vessel subject to the jurisdiction of the United States."[5] However,

[5] A vessel is also "subject to the jurisdiction of the United States" if it is in either "the customs waters of the United States" or "the contiguous zone of the United States…" 46 U.S.C. § 70502(c)(1)(D), (F). Neither the trial judge nor the Eleventh Circuit relied on either of those definitions in finding Martinez was aboard a "vessel subject to the jurisdiction of the United States[,]" and Martinez fails allege any facts or provide any argument that a vessel 15 nautical miles from the coast of the Dominican Republic would indisputably be in either one of those areas.

MDLEA jurisdiction would still apply if the vessel was "without nationality," which is ultimately what both this Court and the Eleventh Circuit determined.

At the time of Martinez's indictment, 46 U.S.C. § 70502(d)(1) stated that "the term 'vessel without nationality' includes" the following:

> **(A)** a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> **(B)** a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
>
> **(C)** a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.[[6]]

On appeal of their convictions, the defendants cited to *United States v. Prado*, 933 F.3d 121 (2d Cir. 2019), in support their argument that the Government failed to prove they were on a "vessel without nationality" at the time of the offenses. In that case, "[t]he Second Circuit concluded that jurisdiction was lacking when three men in a go-fast boat, none of whom identified himself as the master, were not asked for a

[6] Section § 70502(d)(1) was amended on December 23, 2022, *see* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 11519, 136 Stat. 2395, 4142 (2022), to add § 70502(d)(1)(D), which adds the following additional definition for a "vessel without nationality:" "a vessel aboard which no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e)."

claim of nationality or registry. It reasoned that 'failure to volunteer a claim of nationality does not suffice' to create jurisdiction because the statute is clear that a vessel is stateless only if the master fails to claim registry upon request. And it concluded that even if no one identified himself as the master, the Coast Guard should have asked each crew member if he wished to make a claim of nationality or registry." *Nunez*, 1 F.4th at 987–88 (citations omitted) (citing *Prado*, 933 F.3d at 130-32 & n.5).

In holding that the record sufficiently showed that the vessel Martinez and his co-defendants were caught on was "without nationality" so as to establish MDLEA jurisdiction, the Eleventh Circuit acknowledged that the Second Circuit in *Prado* was "the only other circuit to consider a similar set of facts" and that it "reached the opposite conclusion…" *Id.* at 987. However, *Prado*'s reasoning "fail[ed] to persuade" the Eleventh Circuit, in light of its holding in *Nunez* on a then-unsettled issue of law in this circuit—whether a vessel had to meet one of the specific definitions in § 70502(d)(1) to qualify as a "vessel without nationality" under the MDLEA. The *Nunez* panel found, at least implicitly, that the defendants' vessel did not satisfy any of the examples of a "vessel without nationality" under § 70502(d)(1) because the evidence showed their boat "had no master or individual in charge who could make a verbal claim of registry…" *Id.* at 984-85. The panel held, however, that § 70502(d)(1) "does not list every circumstance in which a vessel lacks nationality[,]" and that "[t]o determine what other vessels are 'vessel[s] without nationality,' [courts should] interpret that term against the backdrop of its reasonably well developed meaning in

customary international law." *Id.* at 984 (some quotation marks omitted). Applying that principle, the panel "conclude[d] that the district court had jurisdiction [because ]the smugglers' vessel had no indicia of nationality: no registry papers, identification markings, flag, or verbal claim of nationality by anyone, let alone a master or individual in charge. In the absence of any claim of registry, the vessel lacked nationality." *Id.* at 986. After so holding, the panel rejected *Prado*'s reasoning because it "fail[ed] to grapple with the non-exhaustive nature of the examples in section 70502(d)(1) or to consider the possibility that a vessel may not have a master or individual in charge." *Id.* at 987-88.

"[T]he fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc)). "The reasonableness of a counsel's performance is an objective inquiry. And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315 (citations and footnote omitted). Given the fact that Martinez's vessel did not appear to satisfy any of the express definitions of a "vessel without nationality" under § 70502(d)(1), that whether § 70502(d)(1) was an exhaustive list was an unsettled issue in this circuit at the time, and that the Second Circuit in *Prado* had found no MDLEA jurisdiction under "a similar set of facts," it was reasonable for Darley to believe that Martinez's case had a good chance of ultimately being dismissed for lack of MDLEA

jurisdiction—certainly, Martinez has failed to show that "no competent counsel would have" believed that the arguments presented in his case for finding no MDLEA jurisdiction were almost certain to fail. *Id.*

Accordingly, even accepting as true Martinez's claims that Darley was sure the case would ultimately be dismissed on jurisdictional grounds, Martinez has failed to show that this belief rendered Darley's assistance constitutionally unreasonable.

**b. Entitlement to Evidentiary Hearing on MDLEA Jurisdiction**

As with the exhaustive nature of § 70502(d)(1), whether the MDLEA entitled a defendant to an evidentiary hearing on the issue of jurisdiction appeared to be an open question at the time of Martinez's trial, an issue the *Nunez* panel ultimately answered in the negative, rejecting case law the defendants had cited as indicating otherwise. *See id.* at 988-89. Martinez has failed to show that Darley's purported belief he was entitled to an evidentiary hearing was unreasonable under these circumstances. However, even assuming it was, Martinez has failed to show he was prejudiced by any such error. As the Eleventh Circuit noted on appeal, Martinez and his co-defendants "never identified any facts proved by the government that they contest[, n]or have they identified additional evidence they wanted to introduce at an evidentiary hearing." *Id.* at 988. Martinez has similarly failed to do so in his § 2255 briefing. Moreover, the trial judge effectively provided the defendants with an evidentiary hearing by "allow[ing] them to cross-examine the witnesses for the prosecution about jurisdiction during trial[,]" which the defendants ultimately "failed to do…and otherwise failed to introduce any new evidence about jurisdiction." *Id.* at

989. Because the Court in substance provided Martinez an evidentiary hearing on jurisdiction, he was not prejudiced by any erroneous advice that he was entitled to one.

### c. Pleading "Straight Up"

Martinez alleges that Darley failed to advise him he could plea "straight up" to the indictment and still challenge jurisdiction in the district court and on appeal. (Doc# 251, PageID.1863-64). In his initial filing, Martinez submitted that he would have pleaded "straight up" to the indictment had he not been given bad advice on jurisdictional issues and had Darley told him he had the option to enter into an "open plea" while maintaining the ability to challenge jurisdiction before the district court and appellate court. (Doc# 249, PageID.1842, 1852).[7] He states in his Reply that he

---

[7] "A guilty plea, since it admits all the elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant. On the other hand, jurisdictional error can never be waived by parties to litigation because it implicates a court's power to adjudicate the matter before it." *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (citations and quotations omitted)). The "argument…that [a defendant] was not on board a vessel subject to the jurisdiction of the United States…is a challenge to the federal courts' subject matter jurisdiction and could not be waived by his guilty plea." *United States v. Betancourth*, 554 F.3d 1329, 1333 (11th Cir. 2009). *But see United States v. Ruiz*, 811 F. App'x 540, 543 (11th Cir. 2020) (per curiam) (unpublished) ("Ruiz's guilty plea also means he has waived his arguments that the government proffered insufficient evidence to support his conviction and that the district court relied on improper evidence to show that the vessel was stateless and therefore subject to the United States' jurisdiction under the MDLEA. Ruiz's argument that his vessel was not stateless is a challenge to the district court's finding that the Coast Guard complied with the MDLEA, not to the subject matter jurisdiction of the district court…By pleading guilty, Ruiz admitted that the vessel was in international waters and was without a nationality. Because a defendant who pleads guilty unconditionally 'relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty,' *Class v. United States*, ––– U.S. ––––, 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018)

was "prejudiced by his forfeiture, based on the bad advice of his counsel, of the *possibility* of a three-level reduction for his timely acceptance of responsibility." (Doc# 276, PageID.2234 (emphasis added)).

Martinez's position that he would have received a three-level reduction for timely acceptance of responsibility remains too speculative. In calculating a defendant's offense level for determining his sentencing guideline range, U.S.S.G. § 3E.1.1(a) provides for a decrease by 2 levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. §3E.1.1(b) provides for a decrease by one additional level for qualifying defendants "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." " 'Defendants who plead guilty are not entitled to a § 3E1.1 reduction as a matter of right…' " *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017) (alteration added) (quoting U.S.S.G. § 3E1.1, cmt. n.3). Rather, "[t]he sentencing court may consider a broad variety of evidence when considering whether to grant an acceptance-of-responsibility reduction…" *Id.*[8]

(internal quotation marks omitted), Ruiz has relinquished his challenges to the evidence showing that the vessel was stateless.").

8 Note 1 of the commentary to § 3E1.1 lists the following non-exhaustive factors that are "appropriate considerations" "[i]n determining whether a defendant qualifies for acceptance of responsibility:"

To satisfy *Strickland*'s "prejudice" prong, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Here, Martinez has alleged Darley's purportedly deficient advice only deprived him of the "possibility" of receiving acceptance of responsibility, and he has failed to allege any specific facts to indicate that such a possibility was "substantial"—the mere fact that

---

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous;

(B) voluntary termination or withdrawal from criminal conduct or associations;

(C) voluntary payment of restitution prior to adjudication of guilt;

(D) voluntary surrender to authorities promptly after commission of the offense;

(E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F) voluntary resignation from the office or position held during the commission of the offense;

(G) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and

(H) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

he would have pleaded guilty, without more, indicates only that he could have conceivably been granted the 2-point acceptance-of-responsibility adjustment. *See Bilus v. United States*, No. 20-11585, 2021 WL 3523922, at *6 (11th Cir. Aug. 11, 2021) (per curiam) (unpublished) ("Bilus's assertion that he would have received a two-point reduction for acceptance of responsibility if he had pleaded guilty is based on pure speculation. As discussed previously, no plea offer or agreement was made in his case, and the commentary to U.S.S.G. § 3E1.1 explains that '[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.' U.S.S.G. § 3E1.1, cmt. n.3. Given this commentary and the fact that 'only the district court determines the guideline range,' United States v. Boyd, 975 F.3d 1185, 1190 (11th Cir. 2020), the likelihood that Bilus would have received a guidelines reduction under § 3E1.1 is at best only conceivable, which is insufficient to establish prejudice. *See Harrington*, 562 U.S. at 112, 131 S. Ct. 770 (explaining that, for purposes of *Strickland* prejudice, '[t]he likelihood of a different result must be substantial, not just conceivable')." (footnote omitted)); *United States v. Faubion*, 19 F.3d 226, 229 (5th Cir. 1994) ("Faubion argues that the potential reduction for acceptance of responsibility was impetus enough to plead guilty. The dispositive flaw here is that she can demonstrate no probability that she would have received that adjustment. Faubion reads a cause-and-effect relationship between pleading guilty and receiving the two-point reduction for acceptance of responsibility. The guidelines, however, expressly reject that position." (footnote omitted)); *Hicks v. United States*, 886 F.3d 648, 651 (7th Cir. 2018) ("[T]here is no evidence that [Hicks] would have

met the requirements for the two-point reduction. Though the two questions are connected, the reduction is for accepting responsibility, not simply pleading guilty. And as the presentence investigation report states, there is no information 'indicating that [Hicks] affirmatively accepted responsibility for his conduct.' Even now, Hicks does not declare that he accepts responsibility, so there is no reason to believe that he in fact does and would have said so before his trial.").[9] And because a defendant must qualify for under §3E.1.1(a)'s 2-point reduction in order to receive the additional 1-point reduction under § 3E.1.1(b), Martinez has also only conceivably shown he would have received § 3E.1.1(b)'s adjustment as well.

Moreover, Martinez cannot show that Darley performed unreasonably in purportedly failing to advise him of the possibility of entering a "straight up" plea when, as is explained in more detail below, the record shows that Martinez had already rejected a plea agreement offered by the Government three months before trial. The undersigned finds no reason to believe that Martinez was any less likely to receive an acceptance-of-responsibility adjustment by accepting the plea agreement

[9] While, as noted above, Martinez asked for forgiveness for his crimes at his sentencing hearing, this remark came only after he was convicted at trial and about to be sentenced. *See* U.S.S.G. § 3E1.1, cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."). Even in those "rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial[,] a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.* Thus, Martinez's post-trial plea for forgiveness does not make it substantially more likely that he would have received an acceptance-of-responsibility adjustment had he pled guilty.

as opposed to pleading "straight up," nor has Martinez suggested any other possible benefit he would have received by pleading without an agreement as opposed to pleading with the agreement. Though Martinez claims that Darley never discussed that plea agreement with him, as will be explained, that assertion is wholly incredible in the face of the record.

**d. Plea Agreement**

Martinez alleges in his § 2255 briefing that Darley did not inform him of the plea agreement filed March 22, 2019. (Doc# 73). Darley claims otherwise, stating in his affidavit:

> Contrary to his claims raised, in my consultation with Castro-Martinez, my advice was that his guilt appeared to be clear and could be proven by the Government. At one point Castro had agreed to plead, and we went so far as to file the Notice of Intent, obtain a change of plea date, and prepare for the change of plea hearing. This decision changed once one of his co-defendants claimed to have established contact with a consulate or consul from his country that allegedly told him jurisdiction and the arrest were improper. This was poor and incorrect advice, and once it was relayed to my client, Mr. Castro-Martinez—along with the others—all made the decision to shutter plans to plea and proceed to trial. This decision was against my advice.

(Doc# 268-3, PageID.2162).

"An evidentiary hearing is not required whenever a petitioner asserts a claim of ineffective assistance under section 2255." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citation omitted). Generally, a § 2255 movant "need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief" in order to be entitled to an evidentiary hearing. *Winthrop-Redin*, 767 F.3d at 1216 (quotation omitted). However, "when considering whether an

evidentiary hearing should be held on habeas claims based on occurrences outside the record, no hearing is required if the allegations viewed against the record…are so palpably incredible or patently frivolous as to warrant summary dismissal." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quotations omitted). Here, the undersigned is not faced with merely comparing counsel's after-the-fact affidavit detailing what he did against his former client's § 2255 allegations to the contrary, in the face of an otherwise silent record. Rather, there is ample prejudgment evidence supporting Darley's version of the events so as to render Martinez's conclusory claims to the contrary "palpably incredible."

As noted previously, at a March 15, 2019 pretrial conference—three months before trial was ultimately held—Darley informed the presiding Magistrate Judge, Sonja Bivins, that Martinez intended to plead guilty, and a change-of-plea hearing was scheduled for March 26, 2019. (*See* Docs# 63, 66). On March 22, 2019, Darley filed a written plea agreement and factual resume indicating that Martinez would plead guilty to Count One of the initial indictment. (Doc# 73). On March 24, 2019, however, Darley filed a "Notice of Withdrawal of Intent to Plead Guilty," stating that "this issue arose on Saturday morning, March 23, 2019 after consultation with Castro Martinez." (Doc# 74). The change-of-plea hearing was accordingly canceled (*see* Doc# 75). The following day, Judge Bivins held a recorded telephone conference with Darley and counsel for the Government regarding Martinez's withdrawal of his intent to plead, at which Darley stated that he had talked with Martinez for almost one-

and-a-half hours on March 23, 2019, and that Martinez told him at that meeting that he no longer wished to plead guilty. (*See* Doc# 76).

Moreover, at Martinez's sentencing hearing, Darley informed the Court, unprompted:

> I'm not sure what happened amongst these defendants, but at some point, some information -- and it was bad information -- turned it around because this case should not have been tried. The only dispute was whether or not they were in -- really in international waters versus Dominican waters. And through my first meeting with Mr. Castro Martinez, I thought as well as all the other lawyers -- and I think we had our suspicion as to which client may have gotten that information, but, Your Honor, we tried the case because of a dispute with our clients amongst the waterlines and the boundaries. And we consulted with people all over the world, trying to figure out where we were. And we came to the same conclusion that I think is where we are and why we're here. So the long and short of it, Judge, my position is the case should have pled. And had this bad information not been given to our clients, we would be in a completely different situation here.

(Doc# 265, PageID.1920).

Darley's version of events—that Martinez withdrew his intent to plead guilty after receiving "bad information" from an outside source—is further bolstered by the prejudgment statements of Assistant Federal Defender Latisha Colvin, counsel for Martinez's co-defendant Angel Castro Garcia. Colvin also gave notice at that the March 19, 2019 pretrial conference that her client intended to plead guilty pursuant to a plea agreement (*see* Doc# 64), only to later file a notice withdrawing that intent, on March 20, 2019 (Doc# 69).[10] At a recorded telephone conference with Judge Bivins and counsel for the Government held on March 21, 2019, regarding that withdrawal,

[10] Colvin never filed a copy of Garcia's proposed plea agreement into the record.

Colvin informed Judge Bivins that Garcia had indicated to her his intent to plead guilty by the time of the March 19, 2019 pretrial conference. However, Colvin continued, when she went to visit Garcia with an interpreter to get him to execute the plea agreement, Garcia pulled a "complete 180," claiming that he had contacted someone from the "Dominican Republic consulate" who advised him against pleading guilty. (Doc# 72).[11]

In sum, the record reflects that, years before Martinez filed his present § 2255 motion, Darley told the Court multiple times that his client initially expressed his intent to plead guilty pursuant to a plea agreement, but shortly thereafter withdrew that intent after receiving "bad information." Darley even went so far as to file the anticipated plea agreement into the record (Doc# 73). To accept Martinez's conclusory claim that Darley never told him about that plea agreement, the Court would have to believe that Darley repeatedly misrepresented to the Court that Martinez intended to plead guilty pursuant to a plea agreement, while at the same time concealing the existence of that agreement from his client and instead urging him to go to trial—all for seemingly no other purpose than, perhaps, to preemptively seed the record against possible future claims of ineffective assistance by his client should the worst happen at trial and/or on appeal. Given Darley's consistent statements made both prejudgment and in his affidavit submitted in these § 2255 proceedings, and their

[11] At his own telephone conference with Judge Bivins, Darley stated that, prior to his meeting at which Martinez told Darley he no longer wished to plead guilty, Colvin had told Darley about her own client's withdrawal of his intent. (Doc# 76).

similarity to Colvin's reported experience with her client, Martinez's claim that Darley never told him about the plea agreement is "palpably incredible."

But even accepting as true Martinez's claim that Darley never informed him of the plea agreement, he has failed to show how he was prejudiced by not pleading with it as opposed to proceeding to trial—that is, he has not shown a substantial likelihood of a different outcome. While the plea agreement would have required Martinez to plead guilty only to Count One—with the Government agreeing to dismiss the remaining count—the Court ultimately imposed the same sentences of imprisonment and supervised release for both counts of conviction and ordered them to be served concurrently. For all it appears, then, Martinez would be serving the same amount of time for a conviction on only Count One as he currently is for a conviction on both counts. Moreover, the plea agreement did not guarantee a particular sentence at or above the mandatory minimum; the Government's only agreement with regard to sentencing was to recommend a sentence at the low end of whatever guideline range the Court determined. However, the Court imposed such a sentence anyway, even after Martinez proceeded to trial. As noted previously, Martinez's claims that he would have received acceptance-of-responsibility adjustments are too speculative to show prejudice, and he has not pointed to any other factor that might have resulted in a lower guideline range had he accepted the plea agreement.

Martinez has not shown entitlement to an evidentiary hearing or relief on any of his claims. Accordingly, his § 2255 motion is due to be **DENIED** and **DISMISSED with prejudice**.

**e. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing Section 2255 Proceedings. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id. See also Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)). In all cases, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.' " *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). While "a COA does not require a showing that the appeal will succeed[,]" a "prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (quotations omitted).

Upon due consideration, the undersigned finds that Martinez should be **DENIED** a certificate of appealability in conjunction with the dismissal of the present §2255 motion because he has failed to make a substantial showing of the denial of a constitutional right for any of the grounds raised, and jurists of reason would not find it debatable whether the Court is correct in finding those grounds meritless.[12]

[12] Rule 11(a) of the Rules Governing Section 2255 Proceedings further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation regarding the issuance of a certificate of appealability, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation, *see infra*. Should the Court ultimately deny a certificate of appealability as to some or all grounds for relief, the movant "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## IV. *Conclusions and Recommendations*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Martinez's § 2255 motion (Docs# 249, 251), be **DENIED** and **DISMISSED with prejudice**; that Martinez be **DENIED** a Certificate of Appealability in relation to this dismissal; and that judgment be accordingly set out by separate document under Federal Rule of Civil Procedure 58.[13]

**NOTICE OF THE RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. §636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for

---

[13] See Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The Federal Rules of Civil Procedure…, to the extent that they are not inconsistent with any statutory provision or these rules, may be applied to a proceeding under these rules."); *Sassoon v. United States*, 549 F.2d 983 (5th Cir. 1977) (applying Rule 58's separate-document requirement in a § 2255 proceeding); *United States v. Hassebrock*, 21 F.4th 494, 497 (7th Cir. 2021) (in holding that Rule 58 applied to coram nobis proceedings, nothing that "[m]any [other] circuits have applied Rule 58 to § 2255 motions").

objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

## NOTICE TO *PRO SE* § 2255 MOVANT

Movant is advised that "[a]ll persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court," as well as the applicable federal rules of procedure, "unless excused by Court order." S.D. Ala. GenLR 83.5(a). Federal Rule of Civil Procedure 11 requires that any paper filed with the Court be signed by him personally and provide his "address, e-mail address, and telephone number."[14] Fed. R. Civ. P. 11(a). *See also* Rule 12 of the Section 2255 Rules ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that

---

[14] Movant must <u>handwrite</u> his/her signature/mark (as opposed to, for example, typing his name) in order to satisfy Rule 11(a). *See Becker v. Montgomery*, 532 U.S. 757, 763–64, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001) ("Becker maintains that typing one's name satisfies the signature requirement and that his original notice of appeal, containing his name typed above "(Counsel of Record)," met Civil Rule 11(a)'s instruction…[H]owever, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).").

they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a).

Movant is also advised that, under this Court's local rules, "[a]ny person proceeding *pro se* must, at all times during the pendency of the action to which he or she is a party, keep the Clerk informed of his or her current address and … must promptly notify the Clerk of any change of address … Failure to comply with this Rule may result in sanction, including dismissal of a *pro se* plaintiff's action…" S.D. Ala. GenLR 83.5(b). Additionally, any "request for Court action must be presented by motion and may not be presented by informal means such as a letter." S.D. Ala. GenLR 7. *See also* Fed. R. Civ. P. 7(b).

**DONE** this the **11th** day of **August 2026.**

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**